*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 21, 2025
10:16 AM

v

JASON DEAN STOUT,

Defendant-Appellant.

No. 366522
Macomb Circuit Court
LC No. 22-002979-FH

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of two counts of assault with a dangerous weapon ("felonious assault"), MCL 750.82, after he drew and pointed his firearm at two individuals following a "road rage" incident in Clinton Township, Michigan. Defendant was subsequently sentenced to 18 months' probation. Because defendant was denied the effective assistance of counsel during trial, we reverse his convictions and remand for a new trial.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case involves an assault against victims David Petrat and Jasmine Bucholtz. After a road-rage incident on Gratiot Avenue, defendant and the victims both pulled into the parking lot of a Planet Fitness. Defendant first exited his vehicle, and when the victims exited theirs, defendant asked, "Do we have a f***ing problem?" An argument ensued, during which time defendant and the victims got very physically close to each other. As the victims were walking toward the Planet Fitness, defendant approached them quickly, and Petrat put his arms up in fists, and Bucholtz extended her arms out toward defendant. Defendant then pulled out a gun from the front pocket of his hoodie and began swearing at the victims. After the parties separated, Petrat called 911 and explained to the dispatcher that defendant had a small caliber handgun. Defendant overheard the conversation and yelled at Petrat that "it's actually a .380, b***h." Defendant continued to engage with the defendants, telling Petrat to "[c]ome and do something. I a'int got it no more. I a'int got it no more. Come and do something."

Defendant left the scene and drove to a nearby gas station, where he also called the police. When police officers arrived, defendant was seated in his vehicle. The officers interviewed

defendant, which was captured on one of the officer's body camera. In the video, parts of which were introduced at trial, defendant told the officer:

> I parked over by Planet Fitness. They parked, literally, right in front of me, one spot over. He gets out. I get out. I say: "What the f*** man, what's going on?" And then she gets out: "You're riding my f***ing ass!" I said: "Chill out man, it don't even gotta go like this." I was like, I was, I honestly said: "You don't want to go to this. We can make it a real problem." Then they both walked in my face and I said: "Look, I got a gun." I pulled it out. I said: "Back up." I went back. They said: "We're calling 911." I said: "Go ahead." I put my gun back in the car. And then I left to get in a safe spot, so I wasn't arguing. All I said to them was: "I could've shot you. Be thankful. This is experience. You don't walk up on people. I'm an adult. You can't walk up on me. I've got three kids. I've got a family to protect. You don't walk up on me."

Defendant was charged with two counts of felonious assault. Defendant testified at his trial, where he admitted to pulling the gun, but stated he did so for his own safety. Defendant denied engaging in "road rage" and claimed that the victims followed him into the Planet Fitness parking lot. According to defendant, the victims were the aggressors in the altercation, and defendant believed he was in fear for his life.

As noted, the jury found defendant guilty of two counts of felonious assault, and defendant was sentenced to 18 months' probation. Defendant moved for a new trial, claiming he was deprived of the effective assistance of counsel because his attorney did not introduce certain portions of the body camera that were favorable to him. Defendant also argued his attorney was ineffective because the attorney did not request a self-defense instruction under M Crim JI 7.24 and because his attorney did not object to certain alleged misconduct committed by the prosecutor. The trial court denied the motion, and this appeal followed.

II. JURY INSTRUCTIONS

On appeal, defendant argues the trial court erred by not giving the jury the self-defense instruction contained in M Crim JI 7.24. We disagree.

A. STANDARDS OF REVIEW

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

B. ANALYSIS

To the extent defendant argues the trial court erred by not sua sponte giving the self-defense instruction contained in M Crim JI 7.24, we find the issue is abandoned on appeal. Defendant has not cited any authority to support his argument the trial court should have given a jury instruction, which was not requested by defendant. "It is not enough for an appellant in his brief simply to

announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation omitted).

We further note defendant's verdict cannot be set aside due to the failure of the trial court to give a jury instruction not requested by defendant. MCL 768.29 states, in relevant part:

> The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused. [MCL 768.29.]

"[I]n the absence of a request or objection, the appellate courts have declined to impose a duty on trial courts to give sua sponte limiting instructions . . . even if such an instruction should have been given." *People v Rice*, 235 Mich App 429, 444; 597 NW2d 843 (1999). "[A] trial court is not required to present an instruction of the defendant's theory to the jury unless the defendant makes such a request." *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995). Thus, the trial court had no duty to give the jury instruction under M Crim JI 7.24, regardless of whether the instruction was warranted.

## III. EXCITED UTTERANCE

Defendant next argues the trial court erred by failing to sua sponte address whether the police body camera footage should have been admitted under the excited utterance hearsay exception. We disagree.

### A. STANDARDS OF REVIEW

"A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but if the inquiry requires examination of the meaning of the Michigan Rules of Evidence, a question of law is presented, which we review de novo." *People v Ackerman*, 257 Mich App 434, 442; 669 NW2d 818 (2003). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

### B. ANALYSIS

Defendant acknowledges he never sought admission of the body camera video during trial. Defendant contends, however, that the police body camera video included statements made by defendant that were admissible under the excited utterance exception to the rule against hearsay. On appeal, defendant suggests the trial court should have sua sponte admitted defendant's statements as excited utterances.

Defendant abandoned this issue on appeal because he failed to cite any authority suggesting the trial court had any obligation or authority to sua sponte admit evidence not offered by the defense for admission. See *Kevorkian*, 248 Mich App at 389. Moreover, the trial court had no

obligation to sua sponte admit statements made by defendant on police body camera video. See *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003) (quotation marks and citation omitted) ("[E]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence.").

Assuming for purposes of argument that defendant's statements were admissible under the excited utterance exception, any error committed can be attributed to the defense's failure to offer the video for admission. The police body camera video was provided to the defense before trial; however, defense counsel was unable to watch the video due to technical difficulties. During trial, the prosecutor sought to admit a short portion of the video for impeachment purposes. The trial court, after learning defense counsel had not watched the video, adjourned trial for the day allowing him time to watch the video. Thus, any error committed by not seeking admission was an error of the defense, not the trial court, because the trial court had no obligation to admit the video sua sponte.

## IV. PROSECUTORIAL ERROR

Defendant also argues he was denied a fair trial due to several instances of prosecutorial misconduct[1] during trial. We disagree.

## A. STANDARDS OF REVIEW

"Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). "Where a defendant fails to object to an alleged prosecutorial impropriety, the issue is reviewed for plain error." *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015). "Appellate courts may grant relief for unpreserved errors if the proponent of the error can satisfy the 'plain error' standard." *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).]

## B. ANALYSIS

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *People*

---

[1] While "we recognize that the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, we agree that the term 'misconduct' is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

*v Brown*, 294 Mich App 377, 382-383; 811 NW2d 531 (2011) (citations omitted). "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial. However, if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002) (citation omitted). Where a prosecutor's statements are "made outside the context of a discussion of the specific elements of the crime that need be proved," we have found any error to be harmless. *Id*. at 358.

Defendant argues the prosecution erred by misleading the jury on the law of self-defense. Under MCL 780.972(2):

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [MCL 780.972.]

Defendant provides multiple examples of the prosecutor's statements, which defendant contends misstated the law on self-defense. First, defendant argues the prosecutor wrongfully instructed the jury that defendant had a duty to retreat. Specifically, the prosecutor asked defendant on cross-examination: "So, at no point in time did you ever try to drive away, right?" Defendant answered he did not. This statement does not amount to prosecutorial error, however, because the question was asked "outside the context of a discussion of the specific elements of the crime." *Grayer*, 252 Mich App at 358.

Additionally, during her closing statement, the prosecutor stated:

> So, when you decide when you think about whether the force that was used was necessary, you think about if there is any other ways to protect himself. We went through all of these. You all gave wonderful examples. Don't engage. Stay in the car. Leave. Move. Call 911. But again, gun is the last resort.

Defendant argues, on the basis of these statements, the prosecution misled the jury into thinking defendant had a duty to leave the altercation and drive away from the scene, instead of pulling out his weapon. Defendant further argues the trial court wrongfully relied on discussions that took place in voir dire, during which jurors discussed alternative ways to protect themselves during a conflict, apart from use of a firearm.

The identified example, however, does not comprise a misstatement of law. Under MCL 780.972(2), a defendant only is permitted to use nondeadly force, with no duty to retreat, where the defendant "honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual." MCL 780.972(2). The prosecutor's statements to the jury were part of a discussion on whether it would be reasonable to believe pointing a gun was a necessary use of force in the situation presented.

Next, defendant argues the prosecutor misled the jury into believing defendant was only permitted to pull out his gun after a physical confrontation, if the victims were armed, and only as a last resort. The prosecutor stated:

[E]verybody agreed that a verbal confrontation, a verbal argument is not enough. Every single person agreed that just a confrontation is not enough. There had to be something more. Many of you agreed that there had to be some sort of physical contact to necessitate the need for pulling out the gun. It had to be great bodily harm or death, that there was no other way to protect yourself, more than a confrontation, and as a very last resort, pull the gun, but not an argument.

\* \* \*

So, next, we also can think about whether—when we think about what's honest and reasonable and what's justified is whether they used the degree of force that seemed necessary, and it must be appropriate to the attack made, attack. Those words are written directly in the instruction. There was no attack here at any point in time. So, any kind of force with a weapon would not have been appropriate. The Defendant's use of force went so far beyond what was honest, reasonable, appropriate in this situation. That use of force is a last resort, not a first resort.

Defendant argues the prosecutor erred by suggesting use of the gun was only permitted as a last resort, and there needed to be a physical confrontation for defendant to be allowed to point his gun at the victims in self-defense. As noted, under MCL 780.972(2), use of nondeadly force is permitted where the defendant "honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the *imminent unlawful use of force* by another individual." MCL 780.972(2) (emphasis added). The prosecutor's statements were not in error, however, because they took place in the context of a discussion on the amount of force necessary to defend oneself, given the facts of the situation. The prosecutor argued defendant's use of the gun was an unreasonable escalation because the victims did not indicate they were going to use force against defendant before defendant's use of the weapon and the incident had been a strictly verbal confrontation.

Defendant also argues, during cross-examination, the prosecutor erred by saying: "The Defendant must not have acted—engaged in the commission of the crime leading up to this, and we are not alleging that there was any crime prior to this. The crime was pulling the gun at these two individuals." Defendant argues this statement misled the jury by claiming it is a crime to pull a gun in an act of self-defense. We disagree. Under MCL 780.972(2), a defendant is only able to assert self-defense where he or she "has not or is not engaged in the commission of a crime at the time he or she uses force." MCL 780.972(2). The prosecution's statement was made to concede defendant was not already committing a crime before the gun was pulled. If anything, the prosecution's statement helped, rather than hurt the defense.

Lastly, defendant contends the prosecutor misled the jury because, during her rebuttal argument, she stated:

-6-

We're not just talking about a what could happen. I can promise you that when you read those instructions, nowhere in those instructions are they gonna say what could happen? You can pull it if you just don't know what could happen. That's not the law at all. There has to be something more. It specifically says that there has to be imminent force.

Defendant argues the prosecutor misled the jury because she "suggested that it was wrong to pull out your gun if a person does not know what could happen." However, defendant's argument ignores the full context of the statement. The prosecutor correctly told the jury defendant was only allowed to use force if he reasonably believed there was a threat of "imminent unlawful use of force." MCL 780.972(2). The prosecutor's statements did not amount to error or misconduct. Regardless, whether any of the prosecutor's statements were misstatements of law, there is no prosecutorial error because the trial court correctly and thoroughly instructed the jury on self-defense. See *Grayer*, 252 Mich App at 357.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues defense counsel was constitutionally ineffective. According to defendant, defense counsel failed to request a self-defense instruction under M Crim JI 7.24, did not adequately prepare because he did not watch the body camera footage and failed to introduce that footage, and failed to object to the prosecutor's objectionable statements. Except for the challenge to defense counsel's handling of the prosecutor's statements, we agree.

### A. STANDARDS OF REVIEW

Generally, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "When the reviewing court is left with a definite and firm conviction that the trial court made a mistake, there is clear error." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). However, because no *Ginther*[2] hearing was held, "our review is limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

### B. ANALYSIS

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *Trakhtenberg*, 493 Mich at 51; see also Const 1963, art 1, § 20; US Const, Am VI. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. "Initially, a court must determine whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks and citation omitted). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004).

"When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion." *Ginther*, 390 Mich at 441-442.

> A defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing. [*Id*. at 443-444.]

In this case, the prosecution concedes, and we agree, that defense counsel's failure to request M Crim JI 7.24 was objectively unreasonable. "[W]hen a jury instruction is requested on any theories or defenses and is supported by evidence, it must be given to the jury by the trial judge." *Mills*, 450 Mich at 81. M Crim JI 7.24 states that a "defendant who is attacked by more than one person [or by one person and others helping and encouraging the attacker] has the right to act in self-defense against all of them." There is evidence in the record to support a M Crim JI 7.24 jury instruction. Record evidence shows both victims were in a verbal argument with defendant. Moreover, defendant testified that during the argument the victims came toward him aggressively. Had the defense requested M Crim JI 7.24, the trial court would have been obligated to give the jury instruction. See *Mills*, 450 Mich at 81.

Moreover, defendant was prejudiced by the omission of the jury instruction. Defendant was charged with two counts of felonious assault. One count involved the assault of Petrat and another involving the assault of Bucholtz. During trial, defendant admitted to pulling out a gun during a verbal argument with the victims. Defendant claimed he acted in self-defense against both victims because they were acting aggressively toward defendant and advancing toward him. Although the trial court did instruct the jury regarding self-defense, the instruction did not include the statement that a "defendant who is attacked by more than one person [or by one person and others helping and encouraging the attacker] has the right to act in self-defense against all of them." M Crim JI 7.24. Because the jury was not properly instructed to consider M Crim JI 7.24, and there is a reasonable probability that they would have acquitted defendant if they had been, he is entitled to a new trial on the basis of ineffective assistance.

Defendant also argues that defense counsel was ineffective because he did not view the police body camera video evidence until the end of the second day of trial. We agree. Defense counsel received the video before trial but stated he was not able to watch it due to technical

difficulties. Defense counsel's performance was objectively unreasonable by not taking measures to correct the technical difficulties *before* trial. We cannot conceive any strategic reason for defense counsel to avoid reviewing evidence directly relevant to the crime (as opposed to, perhaps, reviewing the video and deciding it was more damaging than helpful). The failure of defense counsel to review the video, moreover, prejudiced defendant because defense counsel was clearly not prepared during trial to deal with the video.

If defense counsel had offered evidence of defendant's statements as excited utterances, it is likely the trial court would have admitted the statements. "In general, hearsay—an out-of-court statement offered to prove the truth of the matter asserted—may not be admitted into evidence." *People v Propp*, 340 Mich App 652, 662; 987 NW2d 888 (2022); see also MRE 801.

> MRE 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The rule allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy. [*People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citations omitted).]

For a statement to be admitted under the excited utterance exception, three requirements must be met: "First, the statement must arise out of a startling event; second, it must be made before there has been time for contrivance or misrepresentation by the declarant; and third, it must relate to the circumstances of the startling event." *People v Kowalak*, 215 Mich App 554, 557; 546 NW2d 681 (1996) (citation omitted). "Admission of hearsay testimony under the excited utterance exception is within the discretion of the trial court." *Id.* at 558.

> While the time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the excitement when the statement was made, the focus of the exception is on the declarant's lack of capacity to fabricate, not the lack of time to fabricate. [*People v Layher*, 238 Mich App 573, 583; 607 NW2d 91 (1999), aff'd 464 Mich 756 (2001) (quotation marks and citation omitted).]

In this case, had defense counsel sought admission of the statements, it is likely the trial court would have found the statements were excited utterances. The altercation with the victims was very obviously a startling event to defendant, and likely put defendant in a heightened state of excitement. While speaking to police, defendant spoke quickly and said he was "a little shaken up." As a result, officers told defendant to calm down and told him to slow down his speaking while they wrote down his story. Moreover, although defendant testified at trial more or less consistently with the video, the video was important evidence because it showed how defendant was acting at the time of the incident, not months later during court proceedings. Similarly, the trial court allowed the prosecutor to admit certain clips of the video during cross-examination; however, without the context of the full video the jury did not have an appropriate frame to judge defendant's behavior. Ultimately, defendant was denied a fair trial by virtue of his defense counsel

failing to watch the video until trial had already started and, quite obviously, after having watched the video, not being prepared to introduce it.

Lastly, defendant argues that defense counsel was ineffective because he did not object to statements made by the prosecutor. We disagree. Defendant argues defense counsel assistance was ineffective because he failed to challenge instances of prosecutorial misconduct. However, as discussed above, none of the alleged misstatements made by the prosecutor amounted to prosecutorial misconduct or prosecutorial error. Since the statements were not made in error, defense counsel was not objectively unreasonable for failing to object to them. See *People v Posey*, 512 Mich 317, 342 n 10; 1 NW3d 101 (2023) ("[C]ounsel is not ineffective for failing to make frivolous or meritless objections.").

We reverse defendant's convictions and remand the case for a new trial consistent with this opinion. In addition, we deny as moot defendant's motion to remand for a *Ginther* hearing, as we have already concluded defendant is entitled to relief. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young